OPINION
{¶ 1} Defendant-appellant, Bruce A. Southerland ("appellant"), appeals the judgment of the Franklin County Court of Common Pleas, entered upon a jury verdict convicting him of two counts of rape in violation of R.C.2907.02, felonies of the first degree, and seven counts of gross sexual imposition in violation of R.C. 2907.05, felonies of the third degree.
 {¶ 2} Appellant's convictions stem from his sexual abuse of his granddaughter, beginning when the girl was eight or nine years of age and continuing until sometime after her 11th birthday. She testified that, on numerous occasions when appellant and his wife babysat her, appellant touched and licked her breasts and vagina and touched her vagina with his penis.
 {¶ 3} The state's other witness was Columbus Police Detective David Hammerberg, who testified about the details of the police investigation of appellant, including appellant's confession to having sexually abused his granddaughter. Detective Hammerberg testified that he asked the victim to make a "controlled phone call" to appellant in order to elicit discussion by appellant about the abuse. During that recorded phone call, portions of which were played for the jury, appellant encouraged the victim to lie to the police and to tell the police that the abuse did not happen. He told her that he would lie to the police. He claimed that he did not remember when the abuse happened.
 {¶ 4} Later, Detective Hammerberg interviewed appellant. During this interview appellant admitted having touched the victim's vagina "two times" and he admitted rubbing his penis on her vagina and rubbing a dildo between her buttocks. He also admitted that the victim touched his penis.
 {¶ 5} Appellant called three witnesses in his defense. Bruce Southerland, Jr., appellant's son and the victim's father, was called in order to discredit his daughter's testimony. Appellant's other two witnesses were psychological experts called to advance his defense that he is mentally retarded and thus prone to give false confessions.
 {¶ 6} Following his trial and sentencing, appellant timely appealed and advances one assignment of error for our review, as follows:
 APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE, THEREBY DENYING HIM HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.
 {¶ 7} To prove ineffective assistance of counsel, defendant must show that counsel's performance was deficient. Strickland v. Washington
(1984), 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed a defendant by theSixth Amendment to the United States Constitution. Ibid.
 {¶ 8} The defendant must then show that counsel's deficient performance prejudiced his defense. bid. The accused must demonstrate a reasonable probability that a different verdict would have been returned but for counsel's deficiencies. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." bid. "Prejudice" exists only when counsel's performance renders the result of the trial unreliable or the proceeding unfair. Ibid.
 {¶ 9} "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. A defendant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other. Id. at 697.
 {¶ 10} "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. A properly licensed attorney is presumed competent, and the burden of proving ineffectiveness is on the defendant. State v. Smith (1985), 17 Ohio St.3d 98, 100, 17 OBR 219,477 N.E.2d 1128. Thus, counsel's actions that "might be considered sound trial strategy" are presumed effective. Strickland, supra, at 689. Furthermore, counsel need not raise meritless issues. State v. Hill
(1996), 75 Ohio St.3d 195, 661 N.E.2d 1068.
 {¶ 11} Appellant argues that his trial counsel was ineffective for failing to request a hearing to determine his competency to stand trial. Thus, applying the foregoing standards, we must determine whether, on the record before us, counsel made an error in failing to request a competency hearing and whether there is a reasonable probability that, but for this error, the result of the trial would have been different; that is, whether appellant would likely have been found to be incompetent to stand trial.
 {¶ 12} Appellant directs our attention to the report and trial testimony of clinical psychologist Dr. Jolie Brams ("Dr. Brams"). Dr. Brams stated that appellant's overall Intelligence Quotient is 62, which places him in the first percentile for his age group and within the range for which it is appropriate to describe him as "mentally retarded." Dr. Brams stated that appellant's performance was "grossly deficient" throughout the various testing she performed. She stated that his overall functioning is that of an average seven-year-old, his oral language skills are that of a first-grader and his ability to understand directions is that of a child in his fifth month of kindergarten. He demonstrated neurological development problems consistent with intellectual deficits present from before the age of 18, which is part of the definition of mental retardation. Dr. Brams' interview of appellant's wife confirmed that appellant's deficiencies are organic and lifelong, not traumatic in nature.
 {¶ 13} Appellant argues that this evidence is sufficient to demonstrate that counsel's performance was deficient in failing to request a competency hearing and that had such a hearing been held, there is a reasonable probability that appellant would have been found incompetent to stand trial.
 {¶ 14} In response, the state argues that the record is insufficient to overcome the presumption that appellant is competent, pursuant to R.C. 2945.37(G) ("A defendant is presumed to be competent to stand trial."), and the presumption that counsel is effective.Strickland, supra, at 689 ("a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."). (Citation omitted.)
 {¶ 15} The state points out that Dr. Brams never opined whether appellant was competent to stand trial and Dr. Fulero, appellant's expert witness regarding false confessions by the mentally retarded, adamantly stated that competency was not within the scope of his analysis.
 {¶ 16} Moreover, the state maintains, it is far from reasonably probable that appellant would have been found incompetent had counsel requested a hearing. Detective Hammerberg testified that he was able to communicate with appellant during his interview, and that appellant understood the detective's questions. Dr. Brams conceded that appellant was also able to effectively communicate with her, though with a limited vocabulary.
 {¶ 17} The state also directs our attention to the telephone conversation between appellant and the victim, and to Detective Hammerberg's interview with appellant, which were audio taped and admitted as State's Exhibits 14 and 15, respectively. During his conversation with the victim appellant demonstrated consciousness of his guilt and the ramifications that would flow from the victim's reporting of the abuse to police when he encouraged her to "tell `em it didn't happen" and acknowledged that he could get "in trouble" if she did not lie. During his interview with Detective Hammerberg, appellant initially denied the abuse and later said "I don't want to say something and get in trouble." Later on in the interview he said "I just better tell the truth, huh?" and then admitted "I'm just scared, that's all" and stated he was afraid that the police would immediately arrest him. After receiving assurances that that would not happen he admitted to the sexual abuse, but adamantly denied ever penetrating the victim, stating three separate times that he recognized the difference in degree of sexual crimes by saying "That's rape."
 {¶ 18} The state also points out that trial counsel's billing records indicate that counsel obtained court-ordered funds for the assistance of two psychological experts, and both experts were granted entry to the jail to meet with appellant. In addition, counsel logged a total of seven hours conferencing with appellant in jail in preparation for trial. The state argues that these facts demonstrate that counsel did not make an error in failing to move for a competency hearing because seven hours with counsel and additional time with two psychological experts would have been sufficient to reveal to defense counsel any incompetence that might have existed.
 {¶ 19} As noted earlier, a defendant is presumed to be competent to stand trial. A court will deem a defendant incompetent to stand trial only if, after a hearing held pursuant to R.C. 2945.37, the court determines that "because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense." R.C. 2945.37(G).
 {¶ 20} The test is whether the defendant has "`sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has `a rational as well as factual understanding of the proceedings against him." Godinez v. Moran (1993), 509 U.S. 389,396, 113 S.Ct. 2680, 125 L.Ed.2d 321, quoting Dusky v.United States (1960), 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824. (Per Curiam.) Mental retardation, in itself, is not enough to support a claim of incompetence. State v. Beck, 1st Dist. No. C-020432, 2003-Ohio-5838, ¶ 12, discretionary appeal not allowed, 101 Ohio St.3d 1470,2004-Ohio-819, 804 N.E.2d 42; State v. Hall (Feb. 25, 2000), 4th Dist. No. 99CA847; State v. Lewis (July 19, 1999), 12th Dist. No. CA98-10-207;State v. Settles (Sept. 30, 1998), 3rd Dist. No. 13-97-50. Mentally retarded persons are frequently competent to stand trial. Atkins v.Virginia (2002), 536 U.S. 304, 318, 122 S.Ct. 2242, 153 L.Ed.2d 335.
 {¶ 21} In the present case, the record contains no evidence that appellant was unable to consult with his attorney with a reasonable degree of rational understanding or that he lacked a rational and factual understanding of the nature and objective of the proceedings against him. Likewise, the record contains no evidence that his attorney expressed or even harbored any doubts as to appellant's competency to stand trial.
 {¶ 22} During their taped conversation, when the victim asked appellant what she should do in response to questioning by police about appellant's alleged sexual abuse, he replied, "it's up to you" and "tell `em it didn't happen." When she asked whether she should lie he said "I would * * * [unless] you want to get me in trouble." He told her "I'm gonna lie to `em" and asked, "how'd anybody find out?" He also told her "it was a long time ago it happened."
 {¶ 23} At the beginning of his taped interview with Detective Hammerberg appellant knew his Social Security number right away and recited it for the detective with no hesitation. When asked about whether he had ever touched the victim inappropriately, at first he stated, "it was a long time ago" and told the detective that he "patted her on the butt." When the detective made it clear that he was inquiring about more than pats on the buttocks, appellant stated, "if it did it must have happened a long, long time ago" and he emphatically stated that he never had "intercourse" with the victim, even though the detective had not mentioned intercourse. When asked whether he had ever touched the victim's vagina appellant answered, "I don't want to say something and get in trouble." A few moments later he resolved, "I just better tell the truth, then, huh?"
 {¶ 24} The detective asked whether appellant had ever rubbed his penis on the victim's vagina or buttocks and he answered, "It wasn't my penis. She thought it was mine but it wasn't." It was subsequently established that appellant had rubbed a dildo on the victim's buttocks, but he stated, "It didn't go inside. That's rape, there." In fact, on three separate occasions during the interview, appellant told the detective that he had not inserted anything into the victim's body because "that's rape." He also acknowledged awareness that if he had penetrated a 7- or 8-year-old girl, "that would hurt her."
 {¶ 25} When Detective Hammerberg inquired whether appellant had ever touched the victim's vagina with his finger while the victim played outside appellant's house on a trampoline, he stated, "I wouldn't do that in the daytime." He admitted touching the victim's vagina with his hands on two occasions. He admitted to having rubbed his penis on the victim's unclothed vagina while the two were at the victim's home, and also while the two were in appellant's van in the parking lot of Cooper Stadium, where appellant's wife worked. Appellant also admitted that he received sexual enjoyment from these activities.
 {¶ 26} Appellant easily and accurately recalled his Social Security number and he remembered each and every sexual activity in which he had engaged with the victim and the location where each activity occurred. He possessed sufficient awareness of the gravity of the allegations against him and the possible consequences thereof to encourage the victim to lie, and to lie himself (at least at first) during his own police interview. He demonstrated awareness of the difference between rape and other sexual offenses and of the effect that penetration would have upon a young child as opposed to an adult woman. He also demonstrated a recollection and understanding of the fact that when he used a dildo to abuse the victim she did not understand what it was or that it was not his penis.
 {¶ 27} All of this evidence does not call into question — but, rather, demonstrates-appellant's understanding and appreciation of the allegations against him and the situation that he faced. This, coupled with the utter lack of evidence in the record that appellant's counsel or his two psychological experts ever harbored concerns about his competency, renders unavailing his arguments that counsel erred in failing to request a competency hearing and that any competency hearing would likely have resulted in a finding of incompetency. Accordingly, appellant cannot meet either prong of the Strickland test.
 {¶ 28} For all of the foregoing reasons, appellant's sole assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BROWN and FRENCH, JJ., concur.